UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | | |
|---|---|---|
| ANTHONY ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 4:15-CV-44-HSM-CHS |
| | ) | |
| MURRAY BLACKWELDER, CHRIS THORTON, DAVID FORD and BRENDA BURNS, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM and ORDER**

Anthony Allen, a state prisoner who is confined in the Lincoln County jail, in Fayetteville, Tennessee, filed a pro se civil rights complaint for injunctive relief under 42 U.S.C. § 1983, which the Court screened and found to be insufficient as pled [Doc. 3]. In the screening order, the Court allowed Plaintiff twenty days to submit an amended complaint providing specific facts to support the Eighth Amendment claim alleged in the original complaint [*Id*.]. Plaintiff filed the amended complaint [Doc. 4], and it is now before the Court for review to that amended complaint which must be reviewed in order to determine whether Plaintiff has corrected the deficiencies noted in the screening order.

**I.  PLAINTIFF'S ALLEGATIONS**

In the amended complaint, Plaintiff alleges that, on March 21, 2015, he sustained a fracture to his right foot. Plaintiff was sent to the emergency room the next day, where X-rays were taken of his foot. A few days later, he was provided an orthopedic boot to stabilize his foot and referred to Dr. Eric Bouldin, a podiatrist physician and surgeon, for examination.

Ten days after his injury, on March 31, 2015, Plaintiff had his first visit with Dr. Bouldin. Dr. Bouldin examined Plaintiff's foot, took more X-rays, reviewed the X-rays, and diagnosed a "Jones fracture" of the fifth metatarsus of Plaintiff's right foot. Dr. Bouldin advised Plaintiff to continue wearing the boot, told him to return to the doctor's officer every three weeks for three months for monitoring of his injury and for additional X-rays of his foot, and placed Plaintiff under a non-weight bearing stipulation. On the last such visit, Dr. Bouldin reviewed Plaintiff's X-rays, advised him that the bone had not completely closed in on its own, and explained that Plaintiff had two options to close the gap: (1), shock therapy, a procedure to help stimulate bone growth, which would allow the bone to fill in completely, or (2) surgery to place a pin in the bone.

Plaintiff reported to Defendants Nurse Brenda Burns and Assistant Jail Administrator David Ford the two options to fix the bone in his foot, but was told that the jail would not pay for either option. Plaintiff's four grievances complaining about the matter received no responses, though the grievances did prompt a meeting with Defendant Ford in the Administrator's office, where Plaintiff was advised that the mayor would not like to pay the costs of either option. Defendant Ford stated that he would take the following steps: (1) try to resolve the situation by talking to Chief Administrator Chris Thornton, (2) try to arrange a transfer to a Tennessee Department of Correction ("TDOC") facility where the medical problems could be remedied, and (3) talk to Defendant Sheriff Murray Blackwelder about effecting Plaintiff's transfer to a TDOC prison, based on a medical necessity for treatment for his foot.

Plaintiff and his family have made numerous, but unsuccessful, attempts to obtain answers as to the how Defendants intend to resolve Plaintiff's medical problem, but to date Plaintiff has not afforded the treatment or transferred to a TDOC prison. Plaintiff asks the Court

2

either to require Defendants to arrange for him to have surgery on his foot or to transfer him to a facility where that surgery can be performed.

## II. LAW AND ANALYSIS

"[D]eliberate indifference to the serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain," which violates the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). A serious medical need is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004). A sufficiently culpable mental state — one of deliberate indifference—may be evinced by showing that a defendant official knows of, but disregards, an excessive risk to an inmate's heath. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). That is, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. Prison officials may be found deliberately indifferent "in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05.

Courts have found that, as a matter of law, a broken foot constitutes a serious injury. *Herrington v. Hodge*, No. 2:12-CV-01648-AC, 2016 WL 4361526, at *7 (D. Or. Aug. 12, 2016) (finding that a broken metatarsus in a prisoner's right foot demonstrated a serious medical need). Plaintiff's allegation that he was diagnosed with a broken metatarsus in his right foot constitutes a serious medical need and, therefore, satisfies the first component of an *Estelle* claim.

The question becomes therefore whether he has stated enough facts to show that Defendants were deliberately indifferent to that serious medical need.

3

Plaintiff contends that he informed Defendants Nurse Burns and Assistant Jail Administrator Ford about the options for shock therapy or surgery presented to him by Dr. Bouldin and that he was told that the jail would not pay for either option. Plaintiff does not allege that gave that same information to Defendants Sheriff Murray Blackwelder or Chief Jail Administrator Chris Thorton. Plaintiff maintains only that Defendant Ford told him that he would speak Defendant Thorton about shock treatment and surgery and to Defendant Blackwelder regarding Plaintiff's possible transfer to a state prison for medical reasons.

The allegations against Defendants Thorton and Blackwelder are insufficient to show deliberate indifference, as it has been defined in *Farmer*. *See Blackmore*, 30 F.3d at 896 (knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference."); *Thaddeus-X v. Blatter*, 175 F.3d 378, 402 (6th Cir. 1999) (finding that the inquiry for deliberate indifference is "[w]as this individual prison official aware of the risk to the inmate's health and deliberately indifferent to it?" citing *Farmer*, 511 U.S. at 837). Plaintiff cannot show, by means of Defendant Ford's alleged stated intent to discuss Plaintiff's medical situation with Defendants Thorton and Blackwelder, that Defendant Ford in fact apprised these Defendants of Plaintiff's need for further treatment, so that Defendants Thorton and Blackwelder actually were made aware of facts revealing Plaintiff's asserted need for either shock therapy or surgery. Nor can Plaintiff show that Defendants Thorton and Blackwelder actually drew the inference that Plaintiff faced a substantial risk of harm unless he was provided one or the other medical treatment or was transferred to another facility for medical reasons.

Furthermore, to the extent that Plaintiff seeks to hold these two Defendants liable for his claimed medical mistreatment based on their respective roles as supervisory officials over the

4

jail, a theory of supervisory liability is unacceptable in a § 1983 case. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."); *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978 (finding that liability under § 1983 may not be imposed simply because a defendant "employs a tortfeasor"). The law is settled that § 1983 liability must be based on more than respondeat superior, or a defendant's right to control employees. *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995). At a minimum, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution" because "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 676-77. Plaintiff can still hold these two Defendants liable so long as he can demonstrate that they authorized, approved, or knowingly acquiesced in any alleged wrongdoing of a subordinate. *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1989). An "affirmative link" must exist between the subordinate's misconduct and the supervising officers' authorization or approval of the claimed wrongdoing. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). Aside from the speculated conversation involving Plaintiff's broken foot between Defendant Ford and Defendants Thorton and Blackwelder, Plaintiff has not alleged the existence of any true linkage between the latter two Defendants and the denial of further medical treatment for his broken foot.

Accordingly, the Court finds that Plaintiff has failed to state a claim against Defendants Thorton and Blackwelder. These two Defendants are **DISMISSED** as parties in this case.

The denial of medically necessary surgery implicates the Eighth Amendment, whereas the denial of elective surgery typically does not show deliberate indifference to serious medical

5

needs. *Webb v. Driver*, 313 F. App'x 591, 593 and n. (4th Cir. 2008). What is unclear from Plaintiff's allegations is whether Dr. Bouldin actually ordered shock treatment or, alternatively, surgery on Plaintiff's right foot or whether he merely recommended these two options as elective treatment to assist in the complete mending of Plaintiff's broken metatarsus. While the allegations as to whether the treatments were prescribed or elective are somewhat opaque, the Court finds that, at the pleading stage of the litigation, Plaintiff has nudged his medical claims against Defendants Nurse Burns and Ford "across the line from conceivable to plausible," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007), and that he, thereby, has stated an arguable Eighth Amendment claim against them.

### III. CONCLUSION

Plaintiff's colorable Eighth Amendment medical claims will be allowed to proceed against Defendants Burns and Ford. Accordingly, the Clerk is **DIRECTED** to send Plaintiff two service packets, each of which consists of a blank summons and USM 285 form. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty-one (21) days of the date of this Order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service on Defendants. Fed. R. Civ. P. 4. Plaintiff is forewarned that failure to return the completed service packets within the time required will jeopardize his prosecution of this action.

Also, Plaintiff **SHALL** promptly notify the Court of any address changes, and he is **ADVISED** that his failure so to do, <u>within fourteen (14) days of any such change</u>, *see* E.D. Tenn. L.R. 83.13, will result in the dismissal of this lawsuit for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure.

6

**SO ORDERED**.

              */s/ Harry S. Mattice, Jr.*
              HARRY S. MATTICE, JR.
            UNITED STATES DISTRICT JUDGE